UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROMEL FELIPE CAMPOVERDE CHACON,<br>*Petitioner*<br><br>v.<br><br>PAMELA BONDI *et al.*;<br>*Respondents* | § § § § § § § § § § § Case No. SA-25-CA-01764-XR |

# ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Romel Felipe Campoverde Chacon's Petition for a Writ of Habeas Corpus (ECF No. 1), the Federal Respondents' response (ECF No. 4), and Petitioner's reply (ECF No. 7). After careful consideration, the petition is **GRANTED**. It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Romel Felipe Campoverde Chacon (A234 254 584) from custody, under conditions no more restrictive than those in place before the detention at issue in this case, to a public place by **5:00 p.m.** on **January 7, 2026.**

2. Respondents must **NOTIFY** Petitioner's counsel by email[1] of the exact location and time of Petitioner's release as soon as practicable and **at least two hours before his release;**

3. If Petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that he be afforded a bond hearing; and

4. Respondents shall **FILE** a status report **no later than 5:00 p.m.** on **January 8, 2026**, confirming that Petitioner has been released under conditions of release no more restrictive than those in place prior to the detention at issue in this case.

---

[1] Eric Miguel Bernal, eric@ericmbernallaw.com, (210) 314-3700.

## BACKGROUND

Petitioner is a national and citizen of Ecuador, who is currently detained at the South Texas Detention Complex in Pearsall, Texas. ECF No. 1 ¶¶ 1, 5. He last entered the United States without inspection in October 2000, just after his eighteenth birthday. *Id.* ¶ 2. In that time, he has raised a family. His wife and three children are all U.S. citizens. *Id.* ¶ 15.

Before his detention in November 2025, Petitioner was in the process of obtaining an immigrant visa and Lawful Permanent Resident ("LPR") status. *Id.* Because Petitioner entered the United States unlawfully, he must return to the U.S. Embassy in Ecuador to obtain an immigrant visa to return to the United States as an LPR. *Id.* ¶ 9. Without a waiver for his unlawful presence for over a year in the United States, however, his departure would render him inadmissible for 10 years. *See* 8 U.S.C. § 1182(a)(9)(B)(i). To remedy this impediment, Petitioner filed an I-601A Application for Provisional Unlawful Presence Waiver on October 31, 2025. ECF No. 1 ¶ 9; *see* ECF No 1-2. If approved, the waiver would facilitate Petitioner's return to the United States in a very short time. ECF No. 1 ¶ 9. As a prerequisite to the approval of the I-601A Waiver, Petitioner was required to present biometrics at a United States Citizenship and Immigration Services ("USCIS") Application Support Center office in Hauppauge, New York on November 25, 2025. *Id.* ¶¶ 10–11; *see* ECF No. 1-2 at 2–3.

After the appointment, as Petitioner made his way home, Immigration and Customs Enforcement ("ICE") initiated a traffic stop and took him into custody. ECF No. 1 ¶ 4. He was charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and placed in "full" removal proceedings under. *See* ECF No. 4-1 at 1 (Notice to Appear).[2] Petitioner was transferred from New York to the South Texas ICE Processing Center in Pearsall, Texas. ECF No. 1 ¶ 5.

---

[2] Now that Petitioner is in removal proceedings, he will be applying for protection from removal pursuant to 8 U.S.C. §1229b(b)(1).

Respondents are detaining Petitioner without a bond hearing, based on a novel reading of 8 U.S.C. § 1225(b)(2)(A) adopted by the Board of Immigration Appeals ("BIA"). Under that reading, Section 1225(b)(2)(A) would generally require the detention of every noncitizen who entered the country without inspection, unless they are "clearly and beyond a doubt entitled to be admitted." *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025); 8 U.S.C. § 1225(b)(2)(A). Petitioner asserts that his continuing detention without bond violates the INA and his constitutional due process rights. ECF No. 1.

## LEGAL STANDARD

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); also citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## DISCUSSION

The parties dispute both whether the Court has jurisdiction to order the relief Petitioner has requested and whether Petitioner is entitled to that relief. The Court considers its jurisdiction over this case before turning to the merits.

### I. This Court Has Jurisdiction

As a general matter, the Court has jurisdiction over Petitioner's habeas petition pursuant to 28 U.S.C. §§ 1331 and 2241. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL

2886346, at *1 (S.D. Tex. Oct. 7, 2025) (Rosenthal, J.) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law."). Respondents argue that 8 U.S.C. Sections 1252(g) and (b)(9) divest the Court of jurisdiction here. The Court disagrees.

### A.  Section 1252(g) Does Not Preclude Jurisdiction

Respondents assert that the Court lacks jurisdiction under Section 1252(g), which provides:

> [N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). But Section 1252(g) "applies only to three discrete actions that the Attorney general may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) (quoting 8 U.S.C. § 1252(g)). It "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders and thus does not implicate [S]ection 1252(g)." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025) (cleaned up) (quoting *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000)).

Petitioner is not challenging removal proceedings but seeks release—in habeas corpus—because Respondents have unlawfully detained him. "Such claims are not barred by § 1252(g)." *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025).

4

**B.     Section 1252(b)(9)**

Respondents next argue that 8 U.S.C. § 1252(b)(9) precludes jurisdiction.[3] Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

This provision "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up). It does not "'sweep within its scope claims with only a remote or attenuated connection to the removal of an alien'. . . [or] preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available." *Duron v. Johnson*, 898 F.3d 644, 647 (5th Cir. 2018) (quoting *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007)). Finally, it applies only "[w]ith respect to review of an order of removal." 8 U.S.C. § 1252(b); *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020); *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *2 (D. Colo. Oct. 24, 2025).

---

[3] Respondents also cite 8 U.S.C. § 1225(b)(4) for this argument. That section provides,

> The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

Respondents do not identify any decision "favorable to the admission of any alien" or allege that any "challenge" to such a decision has "operate[d] to take [Petitioner] before an immigration judge." 8 U.S.C. § 1225(b)(4). The relevance of this provision is not apparent.

Respondents' argument that Section 1252(b)(9) deprives this Court of jurisdiction over Petitioner's petition fails for at least two reasons. First, Petitioner's claim—that Respondents lack "legal authority to subject [him] to mandatory detention under [Section] 1225 instead of detention with a bond hearing under [Section] 1226(a)"—"is not a review [of] an order of removal, the decision to seek removal, or the process by which removability will be determined." *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025); *Aguilar*, 510 F.3d at 11 ("[T]he legislative history indicates that Congress intended to create an exception for claims 'independent' of removal.").

Second, Petitioner cannot "efficaciously" raise his claims "'within the administrative proceedings' already available." *Duron*, 898 F.3d 647 (quoting *Aguilar*, 510 F.3d at 10). The core of this dispute is whether Petitioner can be detained with no bond hearing—that is, with no administrative opportunity to contest his detention—pending a removal determination. If Section 1252(b)(9) precluded this habeas petition, Petitioner's detention would be "effectively unreviewable," *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality), especially considering the BIA's novel position that immigration judges lack authority to even *entertain* bond requests, *Matter of Hurtado*, 29 I. & N. Dec. at 220. "By the time a final order of removal was eventually entered, the allegedly [illegal] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review." *Jennings*, 583 U.S. at 293.

In short, the Court has jurisdiction to consider Petitioner's claims.

**II.     Petitioner's Detention Is an Unlawful Application of 8 U.S.C. § 1225(b)(2)**

Moving to the merits, Petitioner claims that Respondents lack statutory authority under the INA to detain him without a bond hearing and are depriving him of due process by doing so. *See*

ECF No. 1 at 21–26. Because the Court agrees with Petitioner's statutory arguments, it need not reach his constitutional claims.[4]

### A. Legal Framework for Immigration-Related Detention

The INA prescribes three basic forms of detention for noncitizens in removal proceedings.

First, the INA provides for mandatory detention of noncitizens subject to *expedited removal* under 8 U.S.C. § 1225(b)(1) and other recent arrivals seeking admission under 8 U.S.C. § 1225(b)(2). As the Supreme Court has explained, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Noncitizens detained under this provision may be released only through DHS's exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A). *Id.* at 300.

Second, the INA authorizes the discretionary detention of noncitizens in standard, non-expedited (i.e., "full") removal proceedings before an immigration judge under 8 U.S.C. § 1226. *See* 8 U.S.C. § 1229a; § 1226(a) ("[A]n alien *may* be arrested and detained. . . .") (emphasis added).[5] Noncitizens in detention under Section 1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d).

---

[4] Petitioner also points to a class action out of the Central District of California. In that case, *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the court certified a class as follows:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

That order also extended an earlier declaratory judgment—that Respondents' interpretation of Section 1225(b)(2) is incorrect—to the class. *Id.*; *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025). Because the Court decides this case on statutory grounds, it need not determine the effect of the class-wide order in *Bautista*.

[5] Noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c).

Last, the INA also provides for detention of noncitizens who have been previously ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). This provision is not at issue in the instant matter.

For nearly three decades, Respondents consistently considered noncitizens present in the United States without having been admitted or paroled as detained under 8 U.S.C. § 1226(a), thus entitling them to bond hearings. *See, e.g.*, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination"). Consistent with this longstanding understanding, the Supreme Court recently confirmed that "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. On the other hand, "the language of §§ 1225(b)(1) and (b)(2) is quite clear": "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id.* at 297, 303.[6]

Earlier this year, Respondents adopted a novel theory that noncitizens who are present in the United States without admission or parole are ineligible for bond hearings. In July 2025, Todd Lyons, Acting Director of ICE, issued an internal memorandum (the "Lyons Memorandum") explaining that the agency had "revisited its legal position" and "determined that [Section 1225] of the [INA], rather than [Section 1226], is the applicable immigration detention authority for all applicants for admission."[7] Ultimately, the BIA adopted this position in a precedential decision,

---

[6] Even if this language in *Jennings* is dicta, courts in the Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (quoting *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

[7] "The existence of the memorandum was first reported by the Washington Post on July 14, 2025. Maria Sacchetti & Carol D. Leonnig, *ICE declares millions of undocumented immigrants ineligible for bond hearings*, Washington Post (July 14, 2025), https://www.washingtonpost.com/immigration/2025/07/14/ice-trump-undocumented-immigrants-

*Matter of Hurtado*, 29 I. & N. Dec. at 220, holding that all noncitizens who entered the country without inspection—no matter how long they have been present in the country—are subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2).

### B. Petitioner Cannot Be Detained Under Section 1225(b)(2)

Petitioner argues that Section 1225(b)(2) does not permit his detention and that he may only be detained under Section 1226(a). *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025). Respondents contend, on the other hand, that Petitioner falls under Section 1225(b)(2) because he is an "applicant for admission," which includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1).

The question is whether Section 1225(b)(2) applies to all noncitizens who, like Petitioner, are already in the country but entered without inspection. If so, Section 1225(b)(2) makes Petitioner's detention mandatory. If not, Section 1226(a) applies, Petitioner's detention is discretionary, and he is entitled to a bond hearing if he remains detained. *See, e.g.*, *Belsai D.S.*, 2025 WL 2802947, at *5.

This is not a matter of first impression. In recent months, courts across the country, including this one, have rejected Respondents' broad interpretation of Section 1225(b)(2).[8] These opinions rely on several rationales, from statutory language and context to legislative history and

---

bond-hearings/ [https://perma.cc/LN4F-FJDG]. The memorandum itself was subsequently leaked by legal advocacy groups. *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 24, 2025) [https://perma.cc/4Q6X-GAZC][.]" *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 n.10 (D. Mass. 2025).

[8] *See, e.g.*, *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same); *Acea-Martinez v. Noem*, No. 5:25-cv-1390-XR, ECF No. 9.

9

longstanding agency practice.[9] The Court finds those opinions generally persuasive and will not restate every rationale therein. *See Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement."). Instead, it will focus on the two factors that most clearly command against Respondents' broad interpretation: Section 1225(b)(2)'s plain language and the Supreme Court's interpretation of the relevant statutes.

To start, Section 1225(b)(2)'s language is clear. It states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" removal proceedings. 8 U.S.C. § 1225(b)(2)(A). In other words, Section 1225(b)(2) requires someone to be detained if three conditions are met: (1) the person is an "applicant for admission"; (2) the person is "seeking admission"; and (3) an "examining immigration officer determines" the person "is not clearly and beyond a doubt entitled to be admitted." *Id.*; *see, e.g.*, *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025).

The term "applicant for admission" includes a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Because Petitioner is present in the United States and has not "lawful[ly] ent[ered] . . . after inspection and authorization by an immigration officer," he is an "applicant for admission." *Id.* §§ 1101(a)(13)(A); 1225(a)(1).

---

[9] *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases); *see, e.g.*, *Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) (noting that the BIA's interpretation in *Matter of Hurtado* was not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and was unpersuasive given its "inconsistency with prior pronouncements"); *see also id.* at * 5 (noting that Respondents' interpretation would render a recent amendment to the INA, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), "effectively meaningless").

But at the time of Petitioner's detention, he was not "seeking admission." Again, admission refers to "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). When ICE detained him in 2025, Petitioner was not seeking entry, much less "lawful entry . . . after inspection and authorization." *See Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008), *as amended* (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful *entry* of an alien after inspection, something quite different, obviously, from post-entry adjustment of status." (emphasis in original)); *Lopez Benitez*, 2025 WL 2371588, at *6 (noting that Respondents' interpretation "would render the phrase 'seeking admission' in [Section] 1225(b)(2)(A) mere surplusage"). Because Petitioner is not "seeking admission," ICE may not detain him under Section 1225(b)(2).

If that were not enough, the Supreme Court recently discussed the relationship between Sections 1225 and 1226: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under [Sections] 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under [Section 1226]." *Jennings*, 583 U.S. at 289.

Thus, Section 1225(b)(2) applies to noncitizens "seeking admission," and Section 1226 applies to noncitizens "already in the country." Respondents may not detain Petitioner pursuant to Section 1225(b)(2). Because the Court concludes Section 1225(b)(2) is inapplicable, Petitioner's present detention necessarily falls under 8 U.S.C. § 1226, which entitles him to a bond hearing. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("[T]he Court concludes that § 1225(b)(2) is not applicable to Mr. D.S., he is subject to the discretionary detention regime under § 1226(a), and his continued detention with a bond

hearing is contrary to the laws of the United States. If Respondents seek to continue detaining Mr. D.S., they must provide him with a bond hearing.").

### III.  Appropriate Relief

Because Petitioner cannot be detained under Section 1225(b)(2), the remaining option is Section 1226. As Respondents do not claim that Petitioner is being detained under Section 1226, however, "the Court sees no reason to consider" Section 1226 as a basis for Petitioner's current detention. *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 n.23 (D. Mass. 2025). His detention is unlawful, and habeas relief is proper.

Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). Because fees under the EAJA are not available in habeas corpus proceedings like this one, that request is denied. *Barco v. Witte*, 65 F.4th 782. (5th Cir. 2023).

### CONCLUSION

For the foregoing reasons, the Petition for Habeas Corpus (ECF No. 1) is **GRANTED**. It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Romel Felipe Campoverde Chacon (A234 254 584) from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **5:00 p.m.** on **January 7, 2026.**

2. Respondents must **NOTIFY** Petitioner's counsel by email[10] of the exact location and time of Petitioner's release as soon as practicable and **at least two hours before his release;**

3. If Petitioner is re-detained pursuant to Section 1226, all applicable procedures must be followed, including that he be afforded a bond hearing; and

---

[10] Eric Miguel Bernal, eric@ericmbernallaw.com, (210) 314-3700.

4. Respondents shall **FILE** a status report **no later than 12:00 p.m.** on **January 8, 2026**, confirming that Petitioner has been released under conditions of release no more restrictive than those in place prior to the detention at issue in this case.

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 5th day of January, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE